## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**QUINTAURUS L. JOHNSON**,

      Plaintiff,

v.                          Case No: 8:24-cv-2195-WFJ-NHA

**FLORIDA DEPARTMENT OF
JUVENILE JUSTICE**, **ROSA
ARDITO**, **MATTHEW CLARK**,
and **ANDREW CORREA**,

      Defendants.

_____/

## ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint, Dkt. 18. Plaintiff has responded, Dkt. 19. Upon careful consideration, Defendants' Motion is granted in part and denied in part. If Plaintiff wishes to proceed, Plaintiff should file a second amended complaint in accord with this Order within thirty days. Defendants should take care to fully develop their relevant arguments if they intend to file another motion to dismiss.

## BACKGROUND

Plaintiff Quintaurus Johnson, proceeding *pro se*, worked at the Florida Department of Juvenile Justice ("DJJ") under "senior officials" Rosa Ardito,

Matthew Clark, and Andrew Correa. Dkt. 13 at 1–3. It is not clear from the Amended Complaint if, when, or how Mr. Johnson stopped working at the DJJ. Plaintiff complains, in sum, that the DJJ retaliated against him after he blew the whistle on "widespread harassment, unethical practices, falsified records, and sexually hostile conduct within the Department." *Id.* at 1–2.

Mr. Johnson begins his Factual Background by noting his positive performance reviews for nearly a decade up until 2022. *Id.* at 3–4. Then, "[i]n 2022, Plaintiff initiated a claim with the Equal Employment Opportunity Commission (EEOC) regarding the discriminatory and retaliatory actions taken by DJJ officials." *Id.* at 4. This EEOC charge is not attached to the Amended Complaint, and Plaintiff does not explain what allegations he made therein. Following this EEOC charge, Mr. Johnson claims the DJJ engaged in further retributive action. *Id.*

Specifically, Plaintiff alleges that in January 2022 Defendant Ardito falsely accused him of "mishandling a juvenile case" and issued an unfounded formal reprimand. *Id.* In June the same year, Defendant Ardito allegedly accused Plaintiff of falsifying case notes and thereafter pursued a baseless internal investigation. *Id.* at 5. Plaintiff alleges that he continued to report these retaliatory actions to DJJ Human Resources ("DJJ HR") in August 2022, at which point he received his first-ever negative performance review authored by Defendant Ardito. *Id.*

2

In 2023, Mr. Johnson claims he was unjustly denied an interview for an Assistant Chief/Chief position despite his post-graduate education and experience in leadership. *Id.* at 6. Plaintiff also alleges he was denied an Operations Coordinator role, which was given to a "significantly less qualified individual." *Id.*

In 2024, Plaintiff alleges that his immediate supervisor, Defendant Clark, micromanaged him to the point of "creating a work environment so hostile and unbearable that the Plaintiff's mental and emotional well-being were severely impacted." *Id.* Defendant Clark also allegedly "repeatedly harassed" Plaintiff while he was on medical leave, waging false accusations about case notes and timesheets over calls to Plaintiff's personal cell phone. *Id.* at 7.

Mr. Johnson concludes his factual allegations section by explaining that his whistleblower "reports" detailed not only personal retaliation claims, but also systemic ethical failings. *Id.* Mr. Johnson alleges that "[i]n a series of emails sent throughout 2024, Plaintiff exposed widespread misconduct, including the falsification of records, inappropriate relationships between DJJ employees, and ongoing sexually hostile conduct by a senior employee." *Id.* He does not say to whom he emailed these reports in 2024, although he previously stated he made his 2022 reports to DJJ HR. *Id.* at 5. Plaintiff's last chronological factual allegation occurred in August 2024, when DJJ's Inspector General Office investigated him for "misconduct" and interrogated him regarding some of his claims. *Id.* at 8.

3

The EEOC concluded its investigation of Mr. Johnson's 2022 charge in 2024. *Id.* at 4. It appears that Plaintiff received his Right to Sue letter on or about May 10, 2024. Dkt. 1-1 at 24. Plaintiff attached his Right to Sue letter to his initial complaint filed in state court. *Id.* It is not attached to the Amended Complaint.

Mr. Johnson's Amended Complaint is seven counts: (1) Retaliation under Title VII of the Civil Rights Act of 1964, (2) Retaliation under 42 U.S.C. § 1983 for First Amendment Violations, (3) Hostile Work Environment under Title VII, (4) Failure to Promote under Title VII of the Civil Rights Act of 1964, (5) Intentional Infliction of Emotional Distress, (6) Negligent Supervision and Retention, and (7) Violation of the Florida Whistleblower Act. Defendants offer some limited arguments in their Motion to Dismiss, some of which are granted but most of which are denied for the reasons explained below.

## LEGAL STANDARD

As an initial matter, *pro se* litigants' filings are liberally construed. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in a light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). The pleading must contain "a short and plain statement of the

4

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (cleaned up) (citing *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

The Court need not accept as true bare legal conclusions offered in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, a claim may be dismissed if there is a dispositive legal issue that precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

## DISCUSSION

Defendants offer six bases upon which the Amended Complaint should be dismissed. The Court will address them in the order they are offered, but must first resolve ambiguities in both parties' filings.

It is not clear from either Plaintiff or Defendants which counts are alleged against which Defendants in which capacities, and which dismissal arguments are made as to which counts. Legally, however, only one interpretation is possible. Plaintiff brings Counts I, III, and IV under Title VII of the Civil Rights Act of 1964. "The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act." *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (emphasis in original); *accord Holmes v. Georgia*

*ex rel. Strickland*, 503 F. App'x 870, 872 (11th Cir. 2013). Consequently, "[i]ndividual capacity suits under Title VII are . . . inappropriate." *Busby*, 931 F.2d at 772. Moreover, claims brought against named defendants in their official capacities are duplicative and unnecessary since the employer is already named as a defendant. *Taylor v. Alabama*, 95 F. Supp. 2d 1297, 1309 (M.D. Ala. 2000) (citing *Cross v. Alabama Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1504 (11th Cir. 1995)); *Lynn v. United Techs. Corp., Inc.*, 916 F. Supp. 1217, 1219 (M.D. Ala. 1996); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is . . . treated as a suit against the entity."). Therefore, because the Title VII claims cannot be lodged against the individual defendants in their individual capacities, and because any attempt to sue them in an official capacity would be redundant, the only viable Title VII claims are made against the DJJ.

Count II is Plaintiff's section 1983 claim, which conversely appears viable against only the individual Defendants in their individual capacities. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Footnote ten of *Will* distinguishes that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State,' " citing *Kentucky v. Graham*, 473 U.S. at 167 n.14. Plaintiff, however, prays for injunctive relief only

6

as to the DJJ, compelling it to implement policies that prevent retaliation and protect whistleblowers. Dkt. 13 at 15. In other words, Plaintiff does not seek injunctive relief from the named Defendants in their official capacities, and the DJJ and DJJ employees in their official capacities are not otherwise subject to an action for damages under section 1983. *Will*, 491 U.S. at 71; *see also Taylor*, 95 F. Supp. 2d at 1309–12. As such, Count II can be alleged against only the individual Defendants in their individual capacities.

Count V is an intentional infliction of emotional distress ("IIED") claim that may proceed against only the individual Defendants in their individual capacities. *See C.P. ex rel. Perez v. Collier Cnty.*, 145 F. Supp. 3d 1085, 1096–97 (M.D. Fla. 2015) (dismissing IIED claims against defendant deputy sheriffs sued in official capacities because "Florida Statute § 768.28(9)(a) allows tort claims against a governmental entity 'unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton or willful disregard of human rights, safety, or property.'" As IIED requires proof of willful and wanton conduct, defendants could not be sued in their official capacities); *Gavillan-Martinez v. Dixon*, No. 3:22cv5734/LAC/ZCB, 2024 WL 1097979, at *7–8 (N.D. Fla. Jan. 26, 2024) (noting that "Florida Statute § 768.28(9)(a) 'bars claims for [ ] intentional infliction of emotional distress' against the State and its subdivisions," but allowing

IIED claim against defendant in individual capacity to proceed), *report and recommendation adopted*, 2024 WL 1094688.

Count VI is a negligent supervision and retention claim that Plaintiff alleges against only the DJJ. Dkt. 13 at 13 ("The Florida Department of Juvenile Justice failed in its duty to properly supervise and manage its employees.").

Count VII claims a violation of the Florida Whistle-blower's Act ("FWA"). It appears that Plaintiff makes these allegations against only the DJJ. Dkt. 13 at 14 ("The Florida Department of Juvenile Justice, by retaliating against Plaintiff for exposing unethical conduct and systemic issues within the Department, has violated the protections afforded to state employees under this Act."). This is consistent with the language of the FWA prohibiting *employers* from taking retaliatory actions. *See, e.g.*, Fla. Stat. § 112.3187(2) ("It is the intent of the Legislature to prevent agencies or independent contractors from taking retaliatory action against an employee who reports to an appropriate agency violations of law on the part of a public employer . . . ."). It is also consistent with Florida's application of Title VII case law to FWA claims, as relief granted under Title VII is against the employer. *See Rustowicz v. N. Broward Hosp. Dist.*, 174 So. 3d 414, 419 (Fla. 4th DCA 2015) ("Florida applies federal Title VII case law to the Whistleblower Act."); *Chaudhry v. Adventist Health Sys. Sunbelt, Inc.*, 305 So. 3d 809, 813 (Fla. 5th DCA 2020) ("Although the Whistle Blower's Act is a Florida statute, it is a member of a family of employment

legislation that originated as or was patterned after federal enactments, viz, Title VII of the Civil Rights Act of 1964. When a Florida statute 'is patterned after a federal law on the same subject, the Florida law will be accorded the same construction as given to the federal act in federal courts.'" (citation omitted)). Accordingly, Count VII is alleged against only the DJJ.

In sum, only the DJJ may be a Defendant in Counts I, III, IV, VI, and VII. Only Rosa Ardito, Matthew Clark, and Andrew Correa in their individual capacities are viable Defendants in Counts II and V. If the Court misunderstands Plaintiff's pleadings, he should clarify in a second amended complaint he may file. Otherwise, he should specify that his counts are alleged as to the above Defendants. Keeping in mind the Court's findings and understanding of the Amended Complaint, the Court turns to Defendants' arguments.

## I.      Federal Rule of Civil Procedure 10(b)

Defendants argue that Plaintiff violated Fed. R. Civ. P. 10(b) by making allegations in unnumbered paragraphs. Dkt. 18 at 1. Plaintiff contends his pleading is sufficiently clear. Dkt. 19 at 6–7. Rule 10(b) provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." As such, the allegations in Plaintiff's second amended complaint, should he choose to file one, shall be set out in numbered paragraphs.

## II.    Failure to State a Claim

Defendants broadly argue that Plaintiff has failed to state a claim upon which relief can be granted per Fed. R. Civ. P. 12(b)(6). Dkt. 18 at 2–4. Defendants contend Plaintiff's Amended Complaint is a shotgun pleading "commit[ing] the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 2 (citation and internal quotation marks omitted). Plaintiff responds that his Amended Complaint is clear and specific, satisfying Fed. R. Civ. P. 8(a)'s requirement to plead a short and plain statement of the claim. Dkt. 19 at 4. It is not clear as to which allegations or Defendants the defense argues Plaintiff has failed to state a claim. The Court will respond equally broadly in this section.

Defendants' contention that Plaintiff has failed to separate his causes of action into different counts is unsupported. Plaintiff has pled seven distinct counts, each of which clearly titled with the claim Plaintiff intends to bring. Count I alleges retaliation under Title VII for his protected whistleblowing activities "including baseless disciplinary measures, denial of promotions, and the creation of a hostile work environment." Dkt. 13 at 9. Count II: retaliatory "investigations, false accusations, and harassment" that violated Plaintiff's First Amendment right to "report[] matters of significant public concern, including corruption and sexual harassment within the DJJ." *Id.* Count III: "[t]he [Defendants] subjected the Plaintiff to continuous and pervasive harassment, false accusations, and retaliatory conduct,

10

thus creating a hostile work environment" in violation of Title VII. *Id.* at 10. Count IV: retaliatory denial of "several promotion opportunities, including the positions of Assistant Chief/Chief and Operations Coordinator" in violation of Title VII. *Id.* at 11. Count V: extreme and outrageous retaliatory conduct constituting IIED, "including repeated false accusations, public embarrassment, . . . undue scrutiny," and harassing phone calls made while Plaintiff was on medical leave. *Id.* at 12. Count VI: the DJJ's negligent retention of supervisory employees "[d]espite multiple complaints [and emails] from the Plaintiff and evidence of retaliatory behavior." *Id.* at 13. Count VII: "The Florida Department of Juvenile Justice, by retaliating against Plaintiff for exposing unethical conduct and systemic issues within the Department, has violated the protections afforded to state employees under [the FWA]." *Id.* at 14.

Bearing in mind that *pro se* litigants' filings are liberally construed, *Tannenbaum*, 148 F.3d at 1263, Plaintiff has alleged sufficient facts to support his claims, either in the Factual Background section of his Amended Complaint or again in Counts I-VII. He refers to Defendant Ardito's allegedly baseless accusations of mishandling a case and falsifying case notes, and the resultant formal reprimand and investigation. Dkt. 13 at 4–5. He refers to his first-ever negative performance review amid his reports to DJJ HR and the EEOC, after many previous years of positive feedback. *Id.* at 5. Mr. Johnson was not interviewed for an Assistant Chief/Chief position, nor was he selected to be an Operations Coordinator despite his

qualifications. *Id.* at 6. Defendant Clark allegedly relentlessly micromanaged Plaintiff, and repeatedly contacted him with unfounded grievances while he was on medical leave. *Id.* at 6–7. The DJJ's Inspector General Office allegedly intensely interrogated him on the premise of "misconduct." *Id.* at 8. All of these facts, when taken as true, give rise to facially plausible claims "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Defendants' general proposition that Plaintiff has entirely failed to state any claim is rejected.

The Court notes, however, that the Amended Complaint contains almost no factual allegations as to Defendant Correa. The only specific factual allegations regarding Defendant Correa appear in Count V for IIED and state as follows: "Plaintiff was publicly humiliated in office meetings where Clark and Correa continually made false claims of incompetence. This extreme and outrageous conduct caused Plaintiff significant emotional distress, including chronic anxiety and insomnia." Dkt. 13 at 12–13. Defendant Correa claiming Plaintiff is incompetent in office meetings falls far short of the extreme and outrageous conduct needed to support an IIED claim, as will be discussed in more detail *infra*. If Plaintiff has nothing further to allege as to Defendant Correa in the second amended complaint he may file, Defendant Correa is due to be terminated from this lawsuit.

### III.    Qualified Immunity

Defendants argue Rosa Ardito, Matthew Clark, and Andrew Correa are entitled to qualified immunity because they are state officials who acted in their discretion performing their job duties, and qualified immunity protects those individuals from litigation. Dkt. 18 at 4–6. Plaintiff responds that qualified immunity does not extend to public officials who choose to violate clearly established constitutional rights, such as those protected by the First Amendment and exercised by Plaintiff in this case. Dkt. 19 at 9.

Defendants do not specify which counts they assert qualified immunity against, so the Court must begin by deciphering same. Qualified immunity is inapplicable to Counts I, III, and IV alleging Plaintiff's Title VII claims. First, the Court has decided these counts proceed against only the DJJ, not the individual Defendants that could claim qualified immunity. Second, courts have declared qualified immunity inapplicable in the Title VII context for that reason:

> [N]o qualified immunity exists for individuals sued under Title VII. *Harvey v. Blake*, 913 F.2d 226, 227 (5th Cir. 1990). No immunity from such actions exists because such claims must be made against the municipal officer in his *official* capacity, not in his individual capacity. *See id.* at 227–28. "Because the doctrine of qualified immunity protects a public official from liability for money damages in [his or] her individual capacity only, the doctrine is inapplicable in the Title VII context." *Id.* at 228.

*Busby*, 931 F.2d at 772 (emphasis in original). Under Title VII, there is no individual defendant to immunize from liability, so qualified immunity is inapplicable. Qualified immunity likewise does not apply to IIED Count V. *See Plowright v. Miami Dade Cnty.*, 102 F.4th 1358, 1363–67, 1369 (11th Cir. 2024) (conducting qualified immunity analysis only as to section 1983 claim; using state law to determine immunity as to IIED claim). Counts VI and VII are alleged against only the DJJ, not the individual Defendants, so qualified immunity is inapplicable to those counts as well. The only count against which qualified immunity can be claimed is thus Count II: violation of section 1983.

"Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Maggio v. Sipple*, 211 F.3d 1346, 1350 (11th Cir. 2000) (citations and internal quotation marks omitted). To receive qualified immunity, the official must be acting in their discretionary authority, which includes all actions undertaken as part of their duties and within the scope of their authority. *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994). To resolve a qualified immunity claim, a court must, in either order, (1) decide whether the alleged misconduct violates a constitutional right, and (2) decide

whether the constitutional right at issue was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009).

Part and parcel of whether Plaintiff has alleged a violation of a clearly established right is whether Plaintiff has alleged a violation of a constitutional right at all. *Maggio*, 211 F.3d at 1351 (quoting *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). Here, Plaintiff alleges First Amendment free speech violations. Dkt. 13 at 9-10. "Although the law is well-established that the state may not demote or discharge a public employee in retaliation for speech protected under the first amendment, a public employee's right to freedom of speech is not absolute." *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989). Rather, speech made by government employees is constitutionally protected if it satisfies the elements of the test set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968), and *Connick v. Myers*, 461 U.S. 138 (1983). First, the speech must be on a matter of public concern. Second, the plaintiff's "First Amendment interests in commenting on matters of public concern must outweigh the government's interests, as an employer, in promoting the efficiency of the public services it performs through its employees." *Maggio*, 211 F.3d at 1351 (cleaned up) (summarizing *Pickering-Connick* test).

Defendants do not identify the *Pickering-Connick* test or any other test regarding government employees' protected speech, much less conduct an analysis. *See Tindal v. Montgomery Cnty. Comm'n*, 32 F.3d 1535, 1539–40 (11th Cir. 1994)

(applying *Bryson* test to qualified immunity question to determine whether speech was protected and whether employer's action was retaliation). *Maggio* conducts lengthy analysis on whether the speech at issue was on a matter of public concern, citing *Morgan v. Ford*, 6 F.3d 750 (11th Cir. 1993) and *Tindal*. Defendants' argument for the applicability of qualified immunity is simply that "[a]ll actions taken by these individual Defendants were within their discretionary authority and they are therefore protected by qualified immunity." Dkt. 18 at 5–6. To the Court's understanding, Defendants' argument is incomplete, and the Court declines to finish it for them. *See Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (affirming claims are abandoned when not argued).

That being said, Plaintiff's second amended complaint he may file should describe in more detail the factual allegations of his 2022 EEOC charge. Plaintiff should also specify to whom he communicated about the misconduct alleged in the Amended Complaint, and particularly to whom he sent the 2024 emails referred to on page seven. Plaintiff should also explain his employment status with the DJJ and how it terminated, if it did. At this juncture, the individual Defendants' claim of qualified immunity is denied.

## IV.    Hostile Work Environment Claim

Defendants argue that Plaintiff's hostile work environment claim fails because Plaintiff does not allege membership in a protected group, nor that Plaintiff's employer harassed him based on that membership.  Dkt. 18 at 7–9. Defendants further argue that Defendants' alleged actions do not constitute "severe and pervasive conduct altering the terms and conditions of employment." *Id.* at 8. Plaintiff responds that "[o]ngoing retaliatory conduct alone has been found sufficient to constitute a hostile work environment in cases where such actions were intended to deter protected activity." Dkt. 19 at 15.

"Retaliatory hostile work environment" is a valid cause of action. *Gowski v. Peake*, 682 F.3d 1299, 1311–12 (11th Cir. 2012) ("This court has yet to recognize a retaliatory hostile work environment claim. But every other circuit does. . . . We now join our sister circuits and recognize the cause of action."). In *Gowski*, the court explained that establishing this claim required showing "that the actions complained of were sufficiently severe or pervasive to alter the terms and conditions of employment, thus constituting an adverse employment action." 682 F.3d at 1312. This standard has since been overruled; the evidentiary standard is now "the less onerous 'might have dissuaded a reasonable worker' test . . . , rather than the more stringent 'severe or pervasive' test . . . ." *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1196 (11th Cir. 2021).

17

Defendants' argument that Plaintiff's hostile work environment claim fails because Plaintiff does not allege harassment based on membership in a protected group is therefore unavailing. This is not the only possible type of hostile work environment. "Retaliatory hostile work environment" is a recognized cause of action for employees subjected to a hostile work environment in retaliation for their protected activity. *Gowski*, 682 F.3d at 1312.

Defendants' argument that Defendants' alleged actions do not constitute "severe and pervasive conduct altering the terms and conditions of employment" is also unavailing. First, this is the wrong standard. The question is whether the employer's complained-of conduct might have dissuaded a reasonable worker from engaging in protected activity. *Babb*, 992 F.3d at 1196, 1207. Second, it seems to the Court as this juncture that Mr. Johnson has alleged employer conduct that a reasonable employee might find "materially adverse," which is the appropriate standard by which to judge hostility. *Terrell v. Sec'y, Dep't of Veterans Affs.*, 98 F.4th 1343, 1356 (11th Cir. 2024) (elaborating on the "might have dissuaded a reasonable worker" test). Mr. Johnson has alleged formal reprimands, investigations, negative performance reviews, refusals to interview and promote, and harassing phone calls. It seems to the Court that these actions might well dissuade a reasonable worker from engaging in protected activity. At any rate, Defendants' current argument against Plaintiff's retaliatory hostile work environment claim is rejected.

If Defendants have argument they would like to present on the correct claim and standard, they may do that in a motion to dismiss Plaintiff's second amended complaint.

## V.   Failure to Exhaust

Although jurisdictional, Defendants raise as their penultimate argument that Plaintiff has failed to exhaust administrative remedies. Plaintiff filed an EEOC charge in 2022 "regarding the discriminatory and retaliatory actions taken by DJJ officials," Dkt. 13 at 4, but the Amended Complaint alleges post-charge retaliation claims occurring from 2022 to 2024. Dkt. 18 at 9. Plaintiff responds that courts may exercise jurisdiction over subsequent retaliation claims if the acts of retaliation are reasonably connected to an original EEOC complaint. Dkt. 19 at 7.

A plaintiff must file a charge of discrimination with the EEOC before filing a Title VII action. *Gregory v. Georgia Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). The "judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 1280 (citation and internal quotation marks omitted). The Eleventh Circuit has cautioned that "the scope of an EEOC complaint should not be strictly interpreted." *Id.* (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970)).

In fact, many cases also recognize an exception for retaliation claims. "[I]t is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." *Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. Aug. 1981). In *Gupta*, the plaintiff commenced his lawsuit based on two EEOC charges. *Id.* at 413. While the case was pending, his employer notified him that his employment contract would not be renewed. *Id.* The Court allowed the plaintiff to amend his complaint to include retaliation without first filing with the EEOC because the claim grew out of administrative charges properly before the court. *Id.* at 414.

In *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988), the plaintiff also properly alleged a retaliation claim without first filing with the EEOC. Her lawsuit was properly before the court pursuant to a right to sue letter. *Baker*, 856 F.2d at 168. While the complaint was pending, she sought to enjoin her employer's retaliatory actions taken in response to the lawsuit. *Id.* The Eleventh Circuit concluded the lower court had jurisdiction over the motion for injunction. *Id.* at 169.

*Duble v. FedEx Ground Package System, Inc.*, 572 F. App'x 889 (11th Cir. 2014) declined to follow the exception for retaliation claims. Mr. Duble's initial EEOC charge pertained to his employer's failure to accommodate him. *Duble*, 572

F. App'x at 891. During the EEOC's investigation, his employer's in-house counsel obtained many of Plaintiff's emails containing inappropriate content, which resulted in his termination. *Id.* The court declined to allow the retaliatory termination claim, reasoning that it related "to a discrete act of alleged discrimination that occurred after he filed his initial charge." *Id.* at 893. The court further noted that the plaintiff was terminated in November 2009, but did not file suit until September 2011. *Id.* As his EEOC claim was still pending when he was terminated, yet he failed to add a retaliation charge, he failed to exhaust his administrative remedies on that claim. *Id.*

Here, Mr. Johnson's situation is in line with *Gupta* and *Baker*. His 2022 EEOC charge, while presently shrouded in mystery, allegedly contained claims "regarding the discriminatory and retaliatory actions taken by DJJ officials." Dkt. 13 at 4. Presumably an EEOC investigation into retaliation would uncover ongoing retaliatory acts such that the judicial complaint would include them. *Gregory*, 355 F.3d at 1280. And in any event, alleged escalation of retaliation following the 2022 EEOC charge is a retaliation claim growing out of an administrative charge properly before the court. *Gupta*, 654 F.2d at 414. It is also hard to imagine how adding more retaliatory incidents to the 2022 retaliation charge for which the EEOC issued a right to sue letter would change anything. To be sure, Mr. Johnson would have been prudent to do so. But allowing his claim to proceed aligns with the rationales for both the exhaustion requirement and the retaliation exception. "The purpose of this

exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.' " *Gregory*, 355 F.3d at 1279 (citation omitted). The EEOC has had a chance to investigate Plaintiff's claims and has issued him a Right to Sue letter. As for the retaliation exception, "[i]t is the nature of retaliation claims that they arise after the filing of the EEOC charge. Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case[—]a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII." *Gupta*, 654 F.2d at 414. As the Court has noted, adding more retaliatory incidents to a retaliation charge already before the EEOC seems a useful but non-essential exercise in procedure.

Mr. Johnson's case is distinguishable from *Duble*. In Mr. Duble's initial EEOC charge, he challenged his employer's failure to accommodate his disability. *Duble*, 572 F. App'x at 891. This failure apparently stemmed from his employer's unsuccessful attempts to place him in positions at work that would accommodate him. *Id.* at 890–91. His discrimination and retaliation charges arose from those facts, which were what the EEOC investigated. The court found that Mr. Duble's termination incident was separate, and found it significant that it occurred when his EEOC claim was still pending. *Id.* at 893. Mr. Duble's failure to amend the EEOC

22

charge to allege the retaliatory termination proved fatal. *Id.* Conversely here, Plaintiff's EEOC charge apparently alleged retaliatory acts by the DJJ that the EEOC presumably investigated. Ongoing retaliatory acts post-2022 would not be discrete from the case developed by the EEOC retaliation charges, as the *Duble* court felt Mr. Duble's termination was. Mr. Johnson's failure to add more retaliation claims to his retaliation charge is not fatal here. *See Fox v. Epay Sys., Inc.*, No. 1:22-CV-02652-ELR-LTW, 2024 WL 901657, at *6–7 (N.D. Ga. Jan. 16, 2024) (finding *Duble* inapplicable for similar reasons). Accordingly, the Court currently rejects Defendants' argument that Plaintiff has failed to exhaust his administrative remedies.

That being said, Mr. Johnson should specify the facts and claims alleged in his 2022 EEOC charge in his second amended complaint.

## VI.    Intentional Infliction of Emotional Distress

Defendants argue that Plaintiff's IIED count must be dismissed because there are no allegations demonstrating outrageous conduct by Defendants or severe emotional distress suffered by Plaintiff, as required by Florida law. Dkt. 18 at 11. Plaintiff responds that there are facts supporting both of those prongs of IIED, and, at the very least, discovery should be developed. Dkt. 19 at 16–19.

"In order to state a cause of action for intentional infliction of emotional distress in Florida, it must be shown that: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Williams v. Worldwide Flight Servs., Inc.*, 877 So. 2d 869, 870 (Fla. 3d DCA 2004). Outrageous conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985). Specifically, IIED claims in the employment realm are strongly disfavored, and courts generally do not find those defendants' conduct "outrageous" unless it involves persistent verbal abuse and repeated offensive physical contact. *Jenks v. Naples Cmty. Hosp., Inc.*, 829 F. Supp. 2d 1235, 1257 (M.D. Fla. 2011).

Plaintiff has not alleged any conduct that is outrageous. The bar for outrageous conduct by defendants in the employment context is very high. *See Jenks*, 829 F. Supp. 2d at 1256–57 (dismissing IIED claim because removing plaintiff from managerial position and thereby increasing her stress and possibly the effects of her breast cancer was not outrageous conduct); *Latson v. Hartford Ins.*, No. 605CV1435ORL19KRS, 2006 WL 485097, at *2–4 (M.D. Fla. Feb. 28, 2006) (dismissing IIED claim because defendant's "offensive, discriminatory, and harassing behavior, conversations with a racially biased tone, unwarranted

reprimands and verbal abuse, excessive supervision, criticism, and intimidation, ostracization and demeaning actions in front of coworkers, and discipline for making telephone calls" were all only verbal and not outrageous actions, despite allegedly ultimately causing plaintiff's miscarriage); *Baynes v. Philips Med. Sys., (Cleveland), Inc.*, No. 1:08-CV-2027-TWT, 2009 WL 3158180, at *1, 4–5 (N.D. Ga. Sept. 25, 2009) (granting summary judgment for employer on IIED claim because "harassing" phone calls to plaintiff "almost daily" while she was on medical leave did not constitute extreme and outrageous conduct); *cf. Urquiola v. Linen Supermarket, Inc.*, No. 94-14-CIV-ORL-19, 1995 WL 266582, at *4 (M.D. Fla. Mar. 23, 1995) (stating a claim for IIED where plaintiff alleged numerous incidents of kissing, groping, attempted rape, and use of sexually explicit, demeaning, and vulgar language).

Here, Mr. Johnson has likewise alleged only verbal actions taken by DJJ officials in the employment context. He has alleged a formal reprimand, investigations, a negative performance review, refusals to interview and promote, micromanagement, harassing phone calls, and being falsely accused of misconduct; none of which is persistent verbal abuse and repeated offensive physical contact that is "so outrageous in character . . . as to go beyond all possible bounds of decency, and to be . . . utterly intolerable in a civilized community." *Jenks*, 829 F. Supp. 2d at 1257; *McCarson*, 467 So. 2d at 278–79. Accordingly, Mr. Johnson's Count V

intentional infliction of emotional distress claim is dismissed, and he should not include another IIED claim in his second amended complaint.

## CONCLUSION

The Court's findings are summarized as follows:

1) Initially, only the DJJ is a Defendant in Counts I, III, IV, VI, and VII. Only Rosa Ardito, Matthew Clark, and Andrew Correa in their individual capacities are Defendants in Counts II and V.

2) Plaintiff's second amended complaint he may file shall be set out in numbered paragraphs.

3) If Plaintiff's only allegation as to Defendant Correa is that he "made false claims of incompetence," Defendant Correa will be dismissed following the filing of a second amended complaint.

4) The individual Defendants' claims of qualified immunity are denied at this juncture. Defendants should complete their argument in any subsequent motion to dismiss.

5) Defendants' current argument against Plaintiff's retaliatory hostile work environment claim is rejected. Defendants may present argument on the correct claim and standard in a motion to dismiss Plaintiff's second amended complaint.

6) The Court currently rejects Defendants' argument that Plaintiff has failed to exhaust his administrative remedies, although Plaintiff should specify in his second amended complaint the facts and claims alleged in his 2022 EEOC charge.

7) Plaintiff's Count V claim for intentional infliction of emotional distress is dismissed, and he should not include another IIED claim in his second amended complaint.

8) Plaintiff's second amended complaint he may file should take care to explain the factual allegations of his 2022 EEOC charge, to whom he communicated about the misconduct alleged in the Amended Complaint (particularly to whom he sent the 2024 emails referred to on page seven), and his employment status with the DJJ and how it terminated, if it did.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

Defendants' Motion to Dismiss Plaintiff's Amended Complaint, Dkt. 18, is granted in part and denied in part. If Plaintiff wishes to proceed, Plaintiff should file a second amended complaint in accord with this Order within thirty days. Defendants should take care to fully develop their relevant arguments if they intend to file another motion to dismiss.

**DONE AND ORDERED** in Tampa, Florida, on December 16, 2024.

*/s/ William F. Jung*　　　　　　　　

27

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record
Plaintiff, *pro se*