UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**QUINTAURUS L. JOHNSON**,

       Plaintiff,

v.                        Case No: 8:24-cv-2195-WFJ-NHA

**FLORIDA DEPARTMENT OF
JUVENILE JUSTICE**, **ROSA
ARDITO**, **MATTHEW CLARK**,
and **ANDREW CORREA**,

       Defendants.

_____/

## **ORDER**

Before the Court is Defendants' motion to dismiss Plaintiff's second amended complaint, Dkt. 22. Plaintiff has responded, Dkt. 23. Upon consideration of the parties' submissions, Defendants' motion is granted in part and denied in part. Count VI, Negligent Supervision and Retention alleged against the Department of Juvenile Justice, is dismissed. The remainder of Defendants' motion is denied.

## **BACKGROUND**

### *Procedural History*

Presently before the Court is Plaintiff's second amended complaint and Defendants' third motion to dismiss. Defendants removed Plaintiff's first complaint

from state court to this Court in September 2024. Dkt. 1. Defendants filed their first motion to dismiss in October 2024. Dkt. 11. Before the Court ruled on the first motion to dismiss, Plaintiff filed an amended complaint. Dkt. 13. The Court consequently found the first motion to dismiss moot. Dkt. 14. The Defendants then filed their second motion to dismiss—the motion to dismiss Plaintiff's amended complaint. Dkt. 18. The Court granted in part and denied in part Defendants' second motion to dismiss. Dkt. 20. That order advised that Plaintiff should file a second amended complaint if he wished to proceed, and Defendants should fully develop their relevant arguments if they intended to file another motion to dismiss. The purpose of this was to resolve ambiguities in Plaintiff's amended complaint and flesh out existing arguments in Defendants' second motion to dismiss so the Court could rule on the issues presented. Now, Plaintiff's second amended complaint, Dkt. 21, and Defendants' third motion to dismiss, Dkt. 22, are before the Court. The second amended complaint presents the same causes of action as the first amended complaint. The third motion to dismiss raises arguments that were not raised in the second motion to dismiss.

*Factual Background*

Plaintiff Quintaurus Johnson, proceeding *pro se*, works at the Florida Department of Juvenile Justice ("DJJ") under Rosa Ardito, Matthew Clark, and Andrew Correa. Dkt. 21 at 1–4. Plaintiff complains, in sum, that his "whistleblowing

activities and filing of an EEOC claim triggered a deliberate campaign of retaliation by the defendants, including fabricated accusations, unwarranted disciplinary actions, and the creation of a hostile work environment." *Id.* at 3.

Mr. Johnson begins his factual background by noting his positive performance reviews for nearly a decade up until 2022. *Id.* at 3–4. Then, Plaintiff reported "severe ethical breaches, including workplace corruption, harassment, and falsification of official records" that "set the stage for the retaliatory actions by the Defendants." *Id.* at 4. First, Defendant Ardito allegedly initiated unwarranted reports against Plaintiff, and excluded him from discussions "critical" to his work. *Id.* Defendant Ardito allegedly "accused Mr. Johnson of fabricating case notes . . . and issued a distorted performance evaluation." *Id.* at 5.

Seemingly in response, Plaintiff initiated a claim with the Equal Employment Opportunity Commission (EEOC) regarding discriminatory and retaliatory actions by the DJJ. *Id.* This EEOC charge is not attached to the second amended complaint, and the exact allegations made therein are unclear. Following this EEOC charge, Mr. Johnson claims the DJJ engaged in further retributive action. *Id.* at 6.

Specifically, Plaintiff alleges that in June 2022, Defendant Ardito allegedly accused Plaintiff of falsifying case notes and thereafter pursued a baseless internal investigation. *Id.* at 7. Plaintiff alleges that he continued to report these retaliatory

actions to DJJ Human Resources ("DJJ HR") in August 2022, at which point he received his first-ever negative performance review authored by Defendant Ardito. *Id.* at 7–8.

In 2023, Mr. Johnson claims he was unjustly denied an interview for an Assistant Chief/Chief position despite his post-graduate education and experience in leadership. *Id.* at 8. Plaintiff also alleges he was denied an Operations Coordinator role, which was given to a "significantly less qualified individual." *Id.*

In 2024, Plaintiff alleges that his immediate supervisor, Defendant Clark, micromanaged his every task, and "engag[ed] in petty and harmful nitpicking." *Id.* at 8–9. Defendant Clark also allegedly "repeatedly harassed" Plaintiff while he was on medical leave, waging false accusations about case notes and timesheets over calls to Plaintiff's personal cell phone. *Id.* at 9.

Mr. Johnson concludes his factual allegations section by explaining that his whistleblower "reports" detailed not only personal retaliation claims, but also systemic ethical failings. *Id.* Mr. Johnson alleges that "[i]n a series of emails sent throughout 2024, the Plaintiff exposed widespread misconduct, including the falsification of records, inappropriate relationships between DJJ employees, and ongoing sexually hostile conduct by a senior employee." *Id.* These emails appear to be sent mostly to DJJ employees, specifically HR. *Id.* at 10–11. Plaintiff's last

chronological factual allegation occurred in August 2024, when DJJ's Inspector General Office investigated him for "misconduct" and interrogated him regarding some of his claims. *Id.* at 10.

Plaintiff's second amended complaint then contains a section detailing each individual Defendant's alleged misconduct. Some examples include, but are not limited to, Defendant Correa orchestrating baseless investigations and fabricating accusations, Defendant Ardito manipulating performance evaluations, and Defendant Clark engaging in excessive micromanagement and increasing Plaintiff's workload. *Id.* at 12–15.

The EEOC concluded its investigation of Mr. Johnson's 2022 charge in 2024. *Id.* at 6. It appears that Plaintiff received his Right to Sue letter on or about May 10, 2024. Dkt. 21-1 at 2.

Mr. Johnson's second amended complaint is comprised of six counts. It is numbered I-VII but there is no Count V. The counts are as follows: (I) Retaliation under Title VII, against the DJJ, (II) Retaliation under 42 U.S.C. § 1983 for First Amendment Violations, against the individual Defendants, (III) Hostile Work Environment under Title VII, against the DJJ, (IV) Failure to Promote under Title VII, against the DJJ, (VI) Negligent Supervision and Retention, against the DJJ, and (VII) Violation of the Florida Whistleblower Act, Florida Statutes section 112.3187,

*et seq.*, against the DJJ. Defendants' motion to dismiss is granted in part and denied in part for the reasons explained below.

## LEGAL STANDARD

As an initial matter, *pro se* litigants' filings are liberally construed. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in a light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). The pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (cleaned up) (citing *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

The Court need not accept as true bare legal conclusions offered in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, a claim may be dismissed if there is a dispositive legal issue that precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

Pertinent here, Federal Rule of Civil Procedure 12(g)(2) provides generally that a party who makes a motion under Rule 12 "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." There are some exceptions to this rule. The defense that a plaintiff has failed to state a claim upon which relief can be granted can be raised after an initial motion to dismiss in a defendant's answer, in a motion for judgment on the pleadings, or at trial. *See* Fed. R. Civ. P. 12(h)(2); *MC Squared Grp. Inc v. Bamko LLC*, No. 3:24-CV-110-MCR-HTC, 2024 WL 3550941, at *1 (N.D. Fla. May 4, 2024). Moreover, an action may be dismissed for lack of subject matter jurisdiction at any time. Fed. R. Civ. P. 12(h)(3).

## DISCUSSION

In their third motion to dismiss, Defendants raise new arguments that were not present in their second motion to dismiss. Defendants also raise some failure-to-state-a-claim arguments that were either resolved by the order on the second motion to dismiss or could have been resolved had Defendants made more thorough arguments, which were available to them at that time. The Court will first address the new arguments, then return to the issues that were the subject of the second motion to dismiss.

I.    **Arguments raised for the first time in Defendants' third motion to dismiss**

Defendants now argue that they are entitled to sovereign immunity for Count VI, Negligent Supervision and Retention. Dkt. 22 at 6. They also argue that Plaintiff failed to exhaust his administrative remedies before bringing Count VII, the Florida Whistleblower Act claim. The Court finds that Count VI will be dismissed and Count VII will remain.

A. *Sovereign Immunity for Count VI*

The DJJ argues in its third motion to dismiss that it is entitled to sovereign immunity for Count VI, Negligent Supervision and Retention. Dkt. 22 at 6. It explains that Florida governmental agencies are immune from tort liability arising from their "discretionary" functions, which are supposedly the functions Plaintiff challenges. *Id.* Plaintiff responds, in part, that Federal Rule of Civil Procedure 12(g)(2) bars the DJJ from asserting sovereign immunity in this motion to dismiss when it was not raised in the second motion to dismiss. Dkt. 23 at 21.

Although the DJJ did not raise its sovereign immunity argument in its second motion to dismiss, the Court considers it now because it is jurisdictional in nature. *See* Fed R. Civ. P. 12(h)(3). The sovereign immunity argument is akin to a challenge to the subject matter jurisdiction of this Court, which may be raised at any time. *See*

8

*Cir. Ct. of Twelfth Jud. Cir. v. Dep't of Nat. Res.*, 339 So. 2d 1113, 1114, 1117 (Fla. 1976); *Wallace v. Dean*, 3 So. 3d 1035, 1044 (Fla. 2009); Fed. R. Civ. P. 12(h)(3).

Florida has waived sovereign immunity against tort liability to a delineated extent. Article X section 13 of the Florida Constitution states that "[p]rovision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating." Florida Statutes section 768.28(1) provides:

> In accordance with s. 13, Art. X of the State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of the employee's office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act. . . .

The analysis of whether sovereign immunity applies proceeds in two steps. As a threshold issue, "a court should first determine whether the circumstances alleged would subject a private person to liability under Florida law." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001) (citing *Kaisner v. Kolb*, 543 So. 2d 732, 734 (Fla. 1989)); *Wallace*, 3 So. 3d at 1044; *see* Fla. Stat. § 768.28(1). If a defendant would be liable in the absence of immunity, a court should then

9

proceed to analyze whether sovereign immunity applies to neutralize that liability. *E.g.*, *Lewis*, 260 F.3d at 1262.

Sovereign immunity bars a plaintiff's claim depending on whether the defendant's alleged conduct is "discretionary" or "operational." *Id.* at 1262–63. Discretionary conduct "means that the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning." *Henderson v. Bowden*, 737 So. 2d 532, 538 (Fla. 1999) (quoting *Kaisner*, 543 So. 2d at 736–38). "An 'operational' function, on the other hand, is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented." *Id.* Sovereign immunity bars claims challenging discretionary actions. *Lewis*, 260 F.3d at 1262.

The first consideration—whether a private person would be liable to Plaintiff under Florida law—is not briefed by the DJJ as part of its sovereign immunity argument. Independent research has uncovered case law deciding that an employer would not be liable for negligent supervision and retention if the plaintiff-employee was not injured by an underlying tort recognized at common law. *See, e.g.*, *Cendan v. Sch. Bd. of Broward Cnty., Fla.*, 628 F. Supp. 3d 1191, 1218 (S.D. Fla. 2022) ("Implicit in [a claim for negligent supervision] is a requirement that the employee

10

engage in *some* tortious conduct." (emphasis in original)); *Wheeler v. Blackbear Two, LLC*, No. 6:12-CV-583-ORL-37, 2012 WL 3596128, at *2 (M.D. Fla. Aug. 21, 2012) (dismissing negligent supervision claim in retaliation case because alleged violations of Title VII were not common law torts supporting a negligent supervision claim). Other case law suggests that an employer could be liable for negligent supervision and retention without an underlying tort injuring the plaintiff. *See, e.g.*, *Casey v. Wal-Mart Stores, Inc.*, 8 F. Supp. 2d 1330, 1342 (N.D. Fla. 1998), *aff'd*, 190 F.3d 541 (11th Cir. 1999). The DJJ has not argued either way.

But, after its sovereign immunity argument, the DJJ argues that its employees' alleged misconduct did not occur outside the scope of employment, as would be required to state a negligent supervision claim. Dkt. 22 at 7–8. The Court considers this argument because it affects whether a private employer could be liable for Plaintiff's allegations, which the Court examines before deciding if immunity applies.

A claim for negligent supervision is explained as follows:

> Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment. . . . The plaintiff must allege facts sufficient to show that once an employer received actual or constructive notice of problems with an employee's fitness, it was unreasonable for the employer not to investigate or take corrective action. . . . The employer's liability for

11

> negligent supervision is not, however, unlimited; not only must the employer owe a duty to the plaintiff, but the breach of that duty must be the proximate cause of the plaintiff's harm.

*Dep't of Env't Prot. v. Hardy*, 907 So. 2d 655, 660 (Fla. 5th DCA 2005) (citations omitted).

Negligent supervision and retention claims are available against an employer "for acts of an employee committed outside the scope and course of employment." *Garcia v. Duffy*, 492 So. 2d 435, 438 (Fla. 2d DCA 1986); *accord Watson v. City of Hialeah*, 552 So. 2d 1146, 1148 (Fla. 3d DCA 1989). The rationale is that the employer can be liable for knowingly keeping a dangerous employee on the premises. *Garcia*, 492 So. 2d at 438. If the employer is responsible for bringing the plaintiff into contact with a high-risk employee who engages in unruly and ultimately harmful conduct, the employer can be liable. *Id.* at 439. If the employee's alleged misconduct occurred within the scope of employment, respondeat superior would be the doctrine under which to proceed. *Id.* at 438.

Here, Plaintiff's allegations in his negligent supervision and retention count pertain to actions taken by the individual Defendants in their courses of employment, so Count VI must fail. For example, Plaintiff alleges excessive scrutiny and an unwarranted negative performance review by Defendant Ardito, "ambush-style meetings" and "baseless investigations" by Defendant Correa, retaliatory workloads

and false accusations from Defendant Clark, and inaction by Human Resources. Dkt. 21 at 23–24. These are all actions taken during the individual Defendants' courses of employment, and cannot serve as the basis for a negligent supervision and retention claim. *See Tercier v. Univ. of Miami, Inc.*, 383 So. 3d 847, 853 (Fla. 3d DCA 2023) (dismissing negligent supervision claim in retaliation case because defendant university's professors did not commit an intentional tort against plaintiff, but rather allegedly engaged in retaliatory acts regarding plaintiff's nursing education program).

Because the circumstances alleged would not subject a private person to liability under Florida law, the Court need not decide whether sovereign immunity would apply. *See Lewis*, 260 F.3d at 1264; *Wallace*, 3 So. 3d at 1053. Count VI is dismissed.

### B. *Failure to Exhaust Administrative Remedies for Count VII, Florida Whistleblower Act Claim*

The DJJ argues that Plaintiff's Count VII—violation of the Florida Whistleblower Act ("FWA")—fails because he has not alleged that he exhausted the pre-suit requirement of filing a complaint with the Florida Commission on Human Relations. Dkt. 22 at 15. This is the first time the DJJ has raised this argument. It could not have raised it in response to the first complaint because Plaintiff did not

allege a violation of the FWA. But, it could have raised it in response to Count VII of Plaintiff's amended complaint, yet did not do so.

Thus, pursuant to Federal Rules of Civil Procedure 12(g)(2) and 12(h)(3), this argument is only properly the subject of this third motion to dismiss if it implicates the jurisdiction of this Court.

There is mixed authority on whether failure to exhaust administrative remedies before bringing an FWA action is a jurisdictional bar to proceeding in court. Some cases have stated that "courts are without jurisdiction to preside over Florida whistle-blower actions if a plaintiff failed to exhaust administrative remedies." *E.g.*, *Davis v. Miami-Dade Cnty.*, No. 21-CV-24072, 2022 WL 4119730, at *2 (S.D. Fla. Sept. 9, 2022) (citing *Jackson Health Sys. v. Louis*, 314 So. 3d 628, 629 (Fla. 3d DCA 2021) & *Miami-Dade Cnty. v. Harris*, 278 So. 3d 103, 106-07 (Fla. 3d DCA 2019)). Other cases have explained that exhaustion of administrative remedies before bringing an FWA claim is not a condition that divests a federal court of its jurisdiction. *E.g.*, *Backhurst v. Lee Cnty.*, No. 2:18-CV-61-FTM-99UAM, 2019 WL 952269, at *7 (M.D. Fla. Feb. 27, 2019) ("This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which is not affected by administrative exhaustion of a state law claim."). An FWA claim could still be subject to dismissal on non-jurisdictional grounds if a plaintiff has failed to show that they exhausted administrative remedies. *Id.* (citing *City of Miami v. Del Rio*, 723 So. 2d 299, 300 (Fla. 3d DCA 1998)).

14

This is a unique situation, however, where the DJJ did not raise this argument at its first available opportunity, so the Court must decide whether to consider it now. *Brooks v. Warden* counsels that, at least as it pertained to the Prison Litigation Reform Act in that case, a pre-suit exhaustion requirement can be "a non-jurisdictional claim-processing rule . . . subject to forfeiture under Rule 12(g)(2)" if not asserted by the defense. 706 F. App'x 965, 969–70 (11th Cir. 2017). Other cases of the Eleventh Circuit and Supreme Court, especially in the employment context, have expressed how pre-suit exhaustion requirements are not "jurisdictional." *See Union Pac. R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 81–82 (2009) ("Subject-matter jurisdiction . . . refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived. In contrast, a claim-processing rule . . . does not reduce the adjudicatory domain of a tribunal and is ordinarily forfeited if the party asserting the rule waits too long to raise the point." (citations and quotation marks omitted)); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."); *see also Santiago-Lugo v. Warden*, 785 F.3d 467, 472 (11th Cir. 2015) ("Examples of non-jurisdictional rules . . . include claim-processing rules, such as exhaustion requirements, which seek to promote the

orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." (citation and quotation marks omitted)).

The Court is not convinced that the exhaustion requirement under the FWA is jurisdictional such that it should be considered in this third motion to dismiss. Looking forward, it remains to be seen whether the failure-to-exhaust argument is a failure-to-state-a-claim argument that could properly be considered "in any pleading allowed or ordered under Rule 7(a); by a motion under Rule 12(c); or at trial." Fed. R. Civ. P. 12(h)(2); *see Brooks*, 706 F. App'x at 969 ("[T]he PLRA exhaustion defense is not a failure-to-state-a-claim defense because it is independent from the merits of the plaintiff's claim. For this reason, the exhaustion defense does not fall within the Rule 12(h)(2) exception to Rule 12(g)(2)." (citation omitted)); *but see, e.g.*, *Allocco v. City of Coral Gables*, 221 F. Supp. 2d 1317, 1366 (S.D. Fla. 2002), *aff'd*, 88 F. App'x 380 (11th Cir. 2003) ("The plaintiffs' complaint does not allege that they have satisfied [the exhaustion] requirement, nor have they introduced any evidence to show their compliance. Accordingly, they cannot seek relief under Fla. Stat. § 112.3187."). The Court will address the issue should it arise in Defendants' subsequent filings. For now, the Court does not consider the DJJ's exhaustion argument; Count VII survives.

## II.    Issues that were the subject of the second motion to dismiss

Defendants raise failure-to-state-a-claim arguments regarding Counts I, IV, and VII, addressed in subsections A, D, and E below. Subsection B addresses Defendants' previous argument that the individual Defendants are entitled to qualified immunity. Subsection F addresses Defendants' argument that Plaintiff failed to exhaust his administrative remedies prior to bringing his "federal claims." Subsection C briefly addresses Count III, which Defendants did not offer argument on in this motion to dismiss. Ultimately, besides Count VI that is already due to be dismissed, none of Plaintiff's other counts will be dismissed at this juncture.

### A.  Count I Against the DJJ, Retaliation Under Title VII

The DJJ appears to argue that Plaintiff has failed to state a claim for retaliation because he has not sufficiently alleged that he suffered an adverse employment action, as would be required to state a *prima facie* case. Dkt. 22 at 3.

The DJJ's argument is (1) unpersuasive, see Dkt. 20 at 10–12, and (2) not properly the subject of another motion to dismiss for failure to state a claim. Fed. R. Civ. P. 12(g)(2). Plaintiff's first amended complaint and second amended complaint are substantially similar. If the DJJ wanted to argue that Plaintiff has not sufficiently alleged adverse employment action taken against him to support a retaliation claim, it could have done that in the second motion to dismiss. Instead, the second motion

to dismiss contained a blanket "Failure to State a Claim" argument that apparently intended to address all of Plaintiff's counts. *See* Dkt. 18 at 2. Because the DJJ is "raising a defense or objection that was available to the party but omitted from its earlier motion," the Court will not consider it. *See* Fed. R. Civ. P. 12(g)(2); *MC Squared Grp. Inc*, 2024 WL 3550941, at *1; *Johnson v. Terry*, No. 1:18-CV-1899-AT-JSA, 2021 WL 11718253, at *3 (N.D. Ga. Sept. 1, 2021). Defendants' motion to dismiss for failure to state a claim as to Count I is denied.

> B. *Count II Against the Individual Defendants, Retaliation Under 42 U.S.C. § 1983 for First Amendment Violations*

For Count II, the Court invited Defendants to complete their arguments on why the individual Defendants are entitled to qualified immunity. Dkt. 20 at 26. Defendants now argue that, under the *Pickering-Connick* test,[1] Plaintiff did not engage in speech that was on a matter of public concern, so he was not engaged in speech that is constitutionally protected for government employees. Dkt. 22 at 3–5. Plaintiff responds that his speech reporting "falsified records, systemic corruption, and sexual harassment within the DJJ" implicates "the integrity of a public institution tasked with the welfare of juveniles" and, *i.e.,* matters of public concern. Dkt. 23 at 15.

---

[1] *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) and *Connick v. Myers*, 461 U.S. 138 (1983).

The Court discussed the law on qualified immunity in this context at greater length in its order, Dkt. 20 at 14–16. To summarize it in pertinent part here, qualified immunity is meant to protect government officials from liability if their conduct does not violate a clearly established statutory or constitutional right. *Maggio v. Sipple*, 211 F.3d 1346, 1350 (11th Cir. 2000). Part and parcel of whether a plaintiff has alleged a violation of a clearly established right is whether a plaintiff has alleged a violation of a constitutional right at all. *Id.* at 1351 (citation omitted). Relevant here, "a public employee's right to freedom of speech is not absolute." *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989) (citation omitted). Speech made by government employees is constitutionally protected if it satisfies the elements of the test set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968), and *Connick v. Myers*, 461 U.S. 138 (1983). First, the speech must be on a matter of public concern. Second, the plaintiff's "First Amendment interests in commenting on matters of public concern must outweigh the government's interests, as an employer, in promoting the efficiency of the public services it performs through its employees." *Maggio*, 211 F.3d at 1351 (cleaned up) (summarizing *Pickering-Connick* test).

Whether speech is considered "on a matter of public concern" is subject to its own analysis. "To involve a matter of public concern, a government employee's speech must 'relate to any matter of political, social, or other concern to the community.'" *Id.* at 1351–52 (quoting *Connick*, 461 U.S. at 146). The inquiry is

whether the employee "spoke primarily as a citizen on behalf of the public or primarily as an employee upon matters of personal interest." *Id.* at 1352 (citations omitted). This is determined by examining "the content, form, and context of a given statement[.]" *Id.* (citations and quotation marks omitted).

*Maggio* discusses both *Morgan v. Ford*, 6 F.3d 750 (11th Cir. 1993) and *Tindal v. Montgomery County Commission*, 32 F.3d 1535 (11th Cir. 1994) to illuminate when speech is considered "on a matter of public concern." In *Morgan*, the Court found that the plaintiff's speech was not on a matter of public concern. The plaintiff in *Morgan* claimed retaliation against her for complaining about sexual harassment by her supervisor. 6 F.3d at 751. She filed the sexual harassment charges with the State Department of Corrections' Internal Affairs Division and the State Office of Fair Employment Practices. *Id.* at 752–53. While her complaints concerned workplace sexual harassment, which "is a matter of important social interest," her speech was not considered "on a matter of public concern" because the purpose of her speech was not to raise issues of public concern. *Id.* at 754. The main purpose of her speech was to establish her sexual harassment claim and improve the conditions of her employment. *Id.* at 755. Because her speech centered around private matters, and was presented to official bodies rather than the public, the court found that it was not on a matter of public concern. *Id.*

In *Tindal*, the speech at issue was found to be on a matter of public concern. The plaintiff was a County Sheriff's office employee who executed an affidavit in other employees' federal discrimination lawsuit against the Sheriff. *Tindal*, 32 F.3d at 1537. At that jury trial, she testified about the work environment. *Id.* She was later dismissed from the Sheriff's office and filed her own lawsuit pursuant to section 1983, alleging violations of the First Amendment for terminating her based on her testimony in the previous discrimination suit. *Id.* at 1538. In finding that speech to be on a matter of public concern, the court emphasized the public nature of the court proceeding, rather than speech in a private context. *Id.* at 1540. The court also noted the plaintiff's speech in the previous case was on behalf of others, rather than for herself. *Id.*

In *Maggio*, the court found the plaintiff's speech most similar to *Morgan*, and concluded it was not on a matter of public concern. The *Maggio* plaintiff testified at employee grievance hearings not alleged to be open to the public. 211 F.3d at 1353. The plaintiff testified about fair implementation of the State Department of Labor and Employment Security's personnel and grievance policies. *Id.* The court explained that the public's potential interest in that topic is not the inquiry; the inquiry is "whether the purpose of the plaintiff's speech was to raise issues of public concern." *Id.* (citation omitted). The purpose of Ms. Maggio's testimony was to support the grievance claim of her supervisor, who had been charged with

insubordination. *Id.* Because the plaintiff was engaged in speech primarily to support a private employment grievance, which was addressed through administrative channels, it was not on a matter of public concern. *Id.*

This Court still lacks enough information to decide at this juncture whether Plaintiff's speech was on a matter of public concern. On the one hand, Plaintiff claims that his "whistleblowing activities and filing of an EEOC claim triggered a deliberate campaign of retaliation by the defendants[.]" Dkt. 21 ¶ 7. Plaintiff claims that his "reports extended beyond personal retributive actions—he shed light on systemic unethical practices and ethical failings within DJJ's Circuit 10. In a series of emails sent throughout 2024, the Plaintiff exposed widespread misconduct, including the falsification of records, inappropriate relationships between DJJ employees, and ongoing sexually hostile conduct by a senior employee." *Id.* ¶ 25. This would appear to be speech made not just for Plaintiff's own private employment interests, but speech made "to raise issues of public concern." *E.g.*, *Maggio*, 211 F.3d at 1353 (citation and quotation marks omitted). This speech, however, appears to have been made to DJJ HR, which is an administrative body rather than a public one. Dkt. 21 ¶¶ 29, 34, 64; *e.g.*, *Maggio*, 211 F.3d at 1353; *but see* Dkt. 21 ¶ 62 ("Reports of systemic corruption to *Tallahassee* in early 2024." (emphasis added)). Also, "Plaintiff's 2022 EEOC charge outlined significant retaliation and workplace discrimination" that seems to have pertained privately to him. Dkt. 21 ¶ 14.

But because questions remain surrounding whether Plaintiff intended to raise issues of public concern, and whether Plaintiff's speech occurred in a private or public context, the Court thinks it prudent to let the record further develop. The Defendants' claims of qualified immunity are denied at this juncture.

### C. Count III Against the DJJ, Hostile Work Environment Under Title VII

Defendants' motion to dismiss does not make any argument specifically addressing Count III. Accordingly, Count III will not be dismissed.

### D. Count IV Against the DJJ, Failure to Promote Under Title VII

The DJJ argues that Plaintiff has failed to state a claim under Count IV because he makes "threadbare recitals of the elements" and fails to allege the necessary factual support. Dkt. 22 at 5–6. Defendants did not present an argument to dismiss Count IV in their motion to dismiss Plaintiff's first amended complaint, although Count IV remains largely the same from Plaintiff's first to his second amended complaint. *Compare* Dkt. 13 at 11–12, *with* Dkt. 21 at 23. Because the DJJ is "raising a defense or objection that was available to the party but omitted from its earlier motion," the Court again declines to consider this argument now. *See* Fed. R. Civ. P. 12(g)(2); *MC Squared Grp.*, 2024 WL 3550941, at *1. The motion to dismiss as to Count IV is denied.

### E.  *Count VII Against the DJJ, Violation of the Florida Whistleblower Act*

In addition to its argument that Plaintiff failed to exhaust administrative remedies under the Florida Whistleblower Act, *supra* at pp. 13–16, the DJJ also argues that Plaintiff failed to state a claim under the FWA. Dkt. 22 at 9–12. Specifically, it argues that Plaintiff failed to allege, as required, that "he objected to or refused to participate in an activity, policy, or practice of Defendant that violated a law, rule, or regulation." Dkt. 22 at 10 (citing Fla. Stat. § 448.102(3)). This is likewise an argument that was available to Defendants in response to the first amended complaint, but is only now included in the current motion to dismiss. The Court therefore declines to consider it, and the motion to dismiss as to Count VII is denied. *See* Fed. R. Civ. P. 12(g)(2); *MC Squared Grp.*, 2024 WL 3550941, at *1.

### F.  *Failure to Exhaust Administrative Remedies, Title VII Claims*

The last of Defendants' arguments the Court must address is whether Plaintiff exhausted his administrative remedies with the filing of his 2022 EEOC charge. This issue was initially discussed in the Court's order on the motion to dismiss Plaintiff's amended complaint, Dkt. 20 at 19–23. Based on Plaintiff's allegation that he initiated an EEOC claim "regarding the discriminatory and retaliatory actions taken by DJJ officials," that order largely rejected Defendants' argument that Plaintiff failed to exhaust his administrative remedies. Dkts. 13 at 4; 20 at 21–23. But, the discussion

24

concluded by requesting Plaintiff to further specify the claims of his 2022 EEOC charge. Dkt. 20 at 23. The purpose of this was to confirm and/or clarify the "retaliatory actions" to which Plaintiff referred in the EEOC charge, and *i.e.* what Plaintiff alleged to be the reason for the retaliation. Plaintiff has not substantially clarified this in the second amended complaint.

The law on exhaustion of administrative remedies in this context is explained in greater detail in the order at Dkt. 20. To summarize here, a plaintiff must file an EEOC charge before filing a Title VII claim, and that judicial complaint is limited by the scope of the investigation reasonably expected to grow out of the EEOC charge. *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1279–80 (11th Cir. 2004) (citations and quotations omitted). As an exception, a "district court has ancillary jurisdiction to hear [a retaliation claim] when it grows out of an administrative charge that is properly before the court." *Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 413–14 (5th Cir. Aug. 1981); *accord Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 168–69 (11th Cir. 1988). This is because "[i]t is the nature of retaliation claims that they arise after the filing of the EEOC charge. Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case[—]a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII." *Gupta*, 654 F.2d at 414.

After Plaintiff included limited new information in the second amended complaint, it is still not clear to the Court what Plaintiff alleged in his 2022 EEOC retaliation charge. There is some indication that his 2022 EEOC charge contained claims of retaliation for his whistleblowing activities. *See* Dkt. 21 ¶ 13 ("[Defendant Ardito's retaliatory actions], following Mr. Johnson's protected reports, demonstrate a clear retaliatory pattern designed to discredit him and deter further whistleblowing. Faced with ongoing hostility and harassment, Mr. Johnson sought recourse through the EEOC to address these unlawful retaliatory practices."); *id.* ¶¶ 14, 15 ("Moreover, the Plaintiff's 2022 EEOC charge outlined significant retaliation and workplace discrimination by the Florida Department of Juvenile Justice (DJJ), focusing on the following key incidents: Plaintiff received a downgraded performance review for the 2021-2022 period. This review deviated sharply from prior positive assessments and appeared to be a direct response to the Plaintiff's whistleblowing and protected activities."). But there is also some indication that the 2022 EEOC charge could have alleged retaliatory conduct based on some incident other than whistleblowing activity. *See id.* ¶ 8 (referencing "a 2019 FMLA retaliation lawsuit").

As explained above, a "judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory*, 355 F.3d at 1280 (citation and quotation omitted). Courts

analyze the extent of a reasonable EEOC investigation by first looking at the EEOC charge itself, focusing on the facts alleged therein. *Scott v. Shoe Show, Inc.*, 38 F. Supp. 3d 1343, 1356 (N.D. Ga. 2014) (quoting *Freeman v. Koch Foods of Ala.*, 777 F. Supp. 2d 1264, 1277 (M.D. Ala. 2011)). Ultimately, "the actual investigation triggered by the EEOC charge is the primary factor determining the permissible scope of a judicial complaint of employment discrimination." *Id.* (quoting *Smith v. Sentry Ins.*, 674 F. Supp. 1459, 1467 (N.D. Ga. 1987)). In short, more information is required before the Court can fully conclude whether some claims in Plaintiff's judicial complaint fell within the scope of Plaintiff's 2022 EEOC charge and investigation, and consequently whether he exhausted his administrative remedies before bringing those claims.

As for Plaintiff's allegations that the Defendants' retaliation against him increased after he filed his 2022 EEOC charge—e.g., Dkt. 21 ¶¶ 18, 60b, 67, 68— those claims would seem to fall within the retaliation claim exception explained by *Gupta* and *Baker*. But again, more discovery is necessary on this issue for the Court to conduct a full analysis. As such, the Defendants' argument that Plaintiff has failed to exhaust his administrative remedies prior to bringing his "federal claims" is currently rejected; the Title VII counts are not dismissed at this time. The record may be developed factually on this issue.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

Defendants' motion to dismiss Plaintiff's second amended complaint, Dkt. 22, is granted in part and denied in part. Count VI, Negligent Supervision and Retention alleged against the Department of Juvenile Justice, is dismissed. The remainder of Defendants' motion is denied. Defendants must file an answer within twenty-one (21) days.

**DONE AND ORDERED** in Tampa, Florida, on February 27, 2025.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record
Plaintiff, *pro se*

28