IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

QUINTAURUS L. JOHNSON,

Plaintiff,

v.

FLORIDA DEPARTMENT OF JUVENILE JUSTICE, et al.,

Defendants.

CASE NO.: 8:24-CV-02195-WFJ-NHA

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT FLORIDA DEPARTMENT OF JUVENILE JUSTICE'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff, Quintaurus L. Johnson, appearing *pro se*, submits this Opposition to Defendant Florida Department of Juvenile Justice's ("DJJ") Motion for Summary Judgment (Doc. 115).

DJJ's motion rests on a crumbling foundation: false assertions dressed up as "undisputed facts" and legal arguments that sidestep binding Eleventh Circuit precedent. But facts still matter—and here, the facts are not on DJJ's side.

Nowhere is this clearer than in Count IV (Failure to Promote). DJJ tells this Court the selected candidate "outperformed" Plaintiff in the interview. That's not just misleading—it's objectively false. As the Department's own concealed records now reveal, both candidates received the exact same interview score: 25.00 (Exhibit 6.2). Under Florida law, that tie should have been broken with mandatory Veteran's Preference points. DJJ didn't apply them. It didn't even acknowledge the tie. That is not a mere oversight—it is direct evidence of pretext.

DJJ further leans on its so-called "Statement of Undisputed Facts" (Doc. 115-1), built largely on the testimony of supervisors Clark, Ardito, and Correa. Yet this Court has already sanctioned DJJ (Doc. 132) for concealing internal communications involving these very individuals (Exhibit 1.5). Their credibility is

not just questionable—it's judicially compromised. DJJ cannot claim facts are "undisputed" while actively suppressing the evidence that would dispute them.

In short, the record is riddled with inconsistencies, concealment, and credibility issues that go to the heart of DJJ's proffered defenses. Genuine disputes of material fact remain—not only about retaliatory intent and pretext, but also about DJJ's clear violation of the Florida Whistleblower Act. Summary judgment must be denied.

---

## II. LEGAL STANDARD

Summary judgment is appropriate only when the moving party proves there is *no genuine dispute of any material fact* and that they are *entitled to judgment as a matter of law*. **Fed. R. Civ. P. 56(a).** A fact is "material" if it could affect the case's outcome, and "genuine" if a jury could reasonably side with the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Pro se pleadings—like this one—are held to a more forgiving standard and must be liberally construed. *Haines v. Kerner*, 404 U.S. 519 (1972). At this stage, all evidence and inferences favor the non-moving party. Issues of credibility, weighing of facts, and competing narratives belong to the jury—not the judge.

---

## III. ARGUMENT

### A. Plaintiff Has Made a Prima Facie Case of Retaliation (Count I)

To defeat summary judgment on a Title VII retaliation claim, Plaintiff must show:

(1) protected activity;

(2) adverse employment action; and

(3) a causal link.

*Furcron v. Mail Centers Plus*, 843 F.3d 1295 (11th Cir. 2016).

#### 1. Timeline Doesn't Lie: The "Case Closure" Connection

DJJ argues the 2022 discipline came too long after the 2019 charge. But the timeline tells a different story:

- **Lawsuit Still Alive**: Plaintiff's federal case against Chief Fulford—stemming from the 2019 charge—remained open until January 2022 (*Ex. 1.5*).
- **Same Month, New Attacks**: In January 2022, Fulford's direct report, Rosa Ardito, hit Plaintiff with a "Counseling Memo" for a five-month-old minor delay (*Ex. 2.8*).

- **Retaliation Ramps Up**: Within weeks, Ardito launched a bogus "falsification" probe based on documents she never had (*Ex. 2.2*) and filed a fabricated "threat" report to HR (*Ex. 2.1*).
- **Legal Hook**: Courts measure proximity from when the employer learns of protected activity or litigation ends. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001).

  **Bottom line**: The retaliation kicked in the moment the lawsuit closed. That's no coincidence.

**2. DJJ's "Murder Case" Excuse Falls Flat**

DJJ claims the January 2022 memo wasn't retaliation, just protocol after a youth in Johnson's unit was involved in a murder. That argument doesn't hold water:

- **Suspicious Timing**: Discipline dropped the same month Plaintiff's lawsuit ended.
- **Weak Justification**: The memo cited a five-day delay—months old and trivial (*Ex. 2.8*).
- **Clear Pretext**: A jury could see through it—DJJ used a tragic event as cover to comb through Plaintiff's file and retroactively penalize him.

  There's no evidence anyone else got disciplined for similar clerical delays. DJJ's defense? Paper-thin.

### 3. "He Kept Complaining" ≠ No Retaliation

DJJ says the retaliation wasn't serious—because Plaintiff kept filing complaints. But that's legally irrelevant:

- **Controlling Standard**: The Supreme Court says the test is *objective*—would a reasonable worker be dissuaded?

  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

- **Real-World Harm**: Telework revoked (*Ex. 4.6*), invasive surveillance imposed (*Ex. 4.4*), and a "1.0" performance rating after years of solid service (*Ex. 1.4*).

  That would chill anyone. The fact that Plaintiff stood his ground doesn't let DJJ off the hook.

Courts routinely hold that retaliation can follow the *end* of litigation—not just the filing.

*Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. at 273; *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999).

Here, discipline started the moment the lawsuit closed. That's direct evidence of causation—and more than enough to survive summary judgment.

---

## B. DJJ's Exhaustion Argument Fails: Ongoing Retaliation Requires No New EEOC Filing

DJJ contends that the 2023 non-selections and 2024–2025 retaliation are "discrete acts" barred for failure to file new EEOC charges. That position **misstates the law and flatly ignores binding Eleventh Circuit precedent.**

---

### 1. Legal Framework: Retaliation During Pending EEOC Charges Remains Actionable

For decades, courts have made clear: a plaintiff **is not required** to file a new EEOC charge to pursue claims of retaliation that occur **after** an initial charge is filed but **before** it is resolved.

The Eleventh Circuit and others have firmly established this principle:

- *Gupta v. East Texas State Univ.*, 654 F.2d 411 (5th Cir. 1981)
- *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988)
- *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004)
- *Watson v. Amedisys Holding, LLC*, 298 F. App'x 395, 396 (5th Cir. 2008)

These cases uniformly hold that **retaliation arising during the pendency of a prior charge is part of the same continuum—and is fully actionable** without restarting the EEOC process.

---

**2. Application: DJJ's Retaliation Fell Squarely Within the Protected Window**

Here, Plaintiff's 2022 EEOC charge remained pending through **May 10, 2024** (*Ex. 5.6*). That timeline covers **every instance** of non-selection and retaliatory action DJJ now seeks to exclude.

In addition, Plaintiff filed a Florida Whistleblower Act complaint with the Florida Commission on Human Relations on **February 13, 2025** (Complaint No. 2025110754) (*Ex. 5.5*), further reinforcing his engagement in protected activity.

The following retaliatory acts—each occurring while protected activity was pending—fall squarely within the actionable scope:

- Denial of ADA accommodations (*Ex. 5.1*)
- Fabricated HR complaints and discipline (*Exs. 5.4, 5.7*)
- Targeted investigations and elevated performance scrutiny (*Exs. 5.7, 6.9*)
- Retaliatory involvement of law enforcement and in-house legal teams (*Exs. 6.7, 6.8*)

These are not isolated "discrete acts"—they form a continuous and escalating pattern of retaliation tied directly to Plaintiff's protected conduct.

---

**3. Conclusion: The Exhaustion Defense Is Legally Baseless**

Under *Gupta* and its progeny, retaliatory conduct occurring while an EEOC charge is still active **requires no new filing.** To hold otherwise would undermine the entire purpose of Title VII: protecting employees from reprisal *for asserting their rights.*

**The law does not require employees to restart the administrative process each time an employer retaliates in response to ongoing complaints.** That's exactly the kind of procedural trap the Eleventh Circuit has consistently rejected.

DJJ's exhaustion defense is not only unsupported—it's foreclosed by controlling precedent.

---

C. **<u>Retaliatory Conduct Far Exceeds 'Normal Office Activity': Genuine Disputes Exist as to Hostile Work Environment (Count III)</u>**

DJJ tries to downplay its conduct as mere "normal office activity." A reasonable jury could—and likely would—see it very differently under *Gowski v. Peake*, 682 F.3d 1299 (11th Cir. 2012), which held that a series of retaliatory acts, even if minor when viewed individually, can collectively establish a hostile work environment under Title VII—especially when carried out by multiple supervisors.

Here, the record reflects a sustained and escalating campaign of retaliation that goes far beyond routine supervision:

---

**1. Manufacturing False Evidence**

- Supervisor Sheffer falsely claimed a witness appeared "anxious" and was fleeing from Plaintiff, when in fact the witness was joking about "peach cobbler" (*Ex. 5.4*).
- Supervisor Skillern authored a formal statement—even after the witness declined to make one herself (*Ex. 4.2*).

---

**2. <u>Targeted Accusations and Retaliatory Ambush Meetings</u>**

Behind closed doors, Assistant Chief Andrew Correa and Plaintiff's direct supervisor jointly accused him of falsifying documents—despite having no evidence to support the charge (*Ex. 3.1*).

---

**3. Endangering Workplace Safety**

Despite known safety hazards—including mold and blocked exits—DJJ attempted to compel Plaintiff to return to the building, all while the same supervisors he reported ignored his ongoing ADA accommodation requests (*Ex. 5.5*).

---

**4. Weaponizing Law Enforcement**

- On March 28, 2025, DJJ contacted the Lakeland Police Department to report Plaintiff for alleged "threats."
- The case was closed almost immediately: "No threat was made, rept just wanted to notify police" (*Ex. 6.7*).

---

**5. Institutional Retaliation**

- On February 21, 2025, DJJ circulated internal "Talking Points" aimed at discrediting Plaintiff (*Ex. 6.8*).
- Weeks later, on April 14, 2025, DJJ launched a "Surge of Investigations" into Plaintiff (*Ex. 6.9*), following its failed efforts to criminalize him.

---

This pattern—**false reports to police, denial of medical accommodations, unsafe working conditions, public shaming, and orchestrated internal investigations**—is not "normal office activity." It's a coordinated retaliation campaign.

Under *Gowski*, this evidence presents a textbook hostile work environment claim and **easily precludes summary judgment.**

---

**D. <u>Failure to Promote and Veteran's Preference Violations (Count IV)</u>**

DJJ claims the selected candidate "out-performed" Plaintiff. **The record tells a different story.**

---

**1. The Tie Proves Pretext**

- Both candidates received **identical interview scores** of 25.00 (*Ex. 6.2*).
- Plaintiff had **stronger qualifications** *and* **Veteran's Preference**, which DJJ unlawfully ignored (*Ex. 6.3*).

Florida law is crystal clear: when a veteran and another candidate are tied,

**Veteran's Preference must break the tie.**

See *Fla. Stat. § 295.07(1)(a)*.

DJJ's refusal to apply this statutory mandate isn't just bad HR practice — **it's a violation of state law** and **direct evidence of unlawful motive.** That alone creates a triable issue and blocks summary judgment.

See *Hollifield v. Reno*, 113 F.3d 1555, 1562 (11th Cir. 1997).

---

**2. The Decision Maker Was Tainted**

Andrew Correa, a key player in Plaintiff's retaliation claims, **sat on the interview panel** and **admitted knowing about Plaintiff's protected activity** before the

interview took place (*Ex. 3.1*).

DJJ confirmed Correa conducted the interviews (*Ex. 6.6*).

**That alone injects bias into the hiring process.**

---

**3. Disparate Treatment of Comparators**

DJJ **fast-tracked Sean Skillern's promotion**—even before he completed required training. Meanwhile, Plaintiff was passed over for "performance" despite **superior qualifications** (*Ex. 6.6*).

**Rules were bent for one, enforced against another.** That's classic disparate treatment.

---

This is not a mere disagreement over hiring decisions — **this is a legally protected veteran, denied preference, overlooked by a biased decision maker, while others were promoted under relaxed standards.** That's pretext. That's retaliation. And that's a jury question.

---

**E. Whistleblower Complaint Properly Filed; DJJ's Confidentiality Breach Is Independently Actionable (Count VII)**

DJJ falsely claims that no whistleblower complaint was ever filed. **That's simply untrue—and they know it.**

Plaintiff submitted a formal whistleblower complaint to the **Florida Commission on Human Relations** on **February 13, 2025** (FCHR Complaint No. 2025110754, *Ex. 6.4*), and filed **WB 25-001** with the **Chief Inspector General**—a filing that DJJ **admitted it received** during discovery (*Ex. 6.6*). Both complaints were filed within 60 days of the adverse actions, satisfying the statutory exhaustion requirement under **Fla. Stat. § 112.3187(8)(b).**

Florida law doesn't make this optional—**exhaustion is jurisdictional.** See *Dinehart v. Town of Palm Beach*, 728 So. 2d 360, 362 (Fla. 4th DCA 1999); *Turkiewicz v. UCF*, 21 So. 3d 141, 144 (Fla. 5th DCA 2009).

Plaintiff's complaints alleged serious protected disclosures: **retaliation, denial of ADA rights, unsafe working conditions, and fabricated discipline**—exactly the kind of misconduct § 112.3187(5) is designed to address.

And DJJ didn't stop there. They broke the law **again.**

In direct violation of **§ 112.3188, DJJ disclosed Plaintiff's whistleblower identity**—handing it over to defense counsel in clear breach of confidentiality (*Ex. 6.5*).

That alone is an **independent statutory violation.**

See *Martin v. Dep't of Corrections*, 682 So. 2d 331, 333 (Fla. 5th DCA 1996).

This is not a procedural technicality. It's a pattern of retaliation, followed by a cover-up—and then a cover-up of the cover-up.

At the very least, these facts raise **serious, triable issues** of protected activity and retaliation.

Under *Campbell v. DCF*, 201 So. 3d 164, 170 (Fla. 1st DCA 2016), this claim belongs before a jury. **Summary judgment must be denied.**

---

**IV. Rule 56(d) Objection and Discovery Misconduct**

This Court has already sanctioned DJJ for discovery misconduct (*Doc. 132*), and further relief is warranted under *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939 (11th Cir. 2005). Among other violations, DJJ:

- Withheld critical emails later uncovered during DOAH proceedings,
- Failed to produce CCC reports,

- Provided no privilege log,
- Stripped metadata from key documents, and
- Relied on testimony from Matthew Clark—who resigned while under investigation for falsifying records (*Ex. 6.6*).

Critically, **Defendant Andrew Correa was himself found by the Office of Inspector General to have fabricated disciplinary documentation**. In October 2024, the Department issued a substantiated finding against Correa for *"Violation of Policy/Rule"* after he presented a falsified counseling memo to **JPO M.G.** misattributing authorship to Supervisor Korri Stallworth, who later confirmed she did **not** write or authorize the document. The Department was forced to amend the record to reflect that **Correa created the memo** without supervisory approval (*Ex. 3.5*).

This substantiated finding directly undermines Correa's credibility and supports Plaintiff's claim that the 2024 "falsification" meeting was not administrative, but part of a **larger retaliatory campaign involving pretext and fabricated discipline.**

Plaintiff has relied on all evidence currently available but **reserves an express objection under Rule 56(d)**. Key facts—including communications and metadata responsive to RFP 22—remain exclusively in DJJ's control. Their failure to

produce native-format documents, already sanctioned by this Court, supports an inference that the missing data would show **coordination between Correa, Ardito, and Clark** in constructing the retaliatory narrative.

That metadata would likely reveal **authorship, timestamps, and the pattern of coordination** central to Plaintiff's retaliation theory. Under these circumstances, **summary judgment is both premature and improper.**
See *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1288 (11th Cir. 2008).

In addition, **Rule 37(e)** permits courts to impose sanctions for the loss of electronically stored information when, as here, the missing data would have been relevant to the issues and its loss prejudices the opposing party. The discovery violations here meet that threshold.

**At minimum, the credibility of the agency's decision-makers and the suppression of critical communications raise triable issues for the jury. Summary judgment must be denied.**

---

## V. CONCLUSION

This is not a case of isolated workplace grievances. It is a case about a state agency that systematically retaliated against a public employee for standing up, speaking out, and refusing to be silenced.

For over five years, the Department of Juvenile Justice has engaged in a deliberate campaign to discredit, marginalize, and eliminate Plaintiff from the ranks. From fabricated misconduct allegations and manipulated hiring outcomes to the unlawful disclosure of whistleblower complaints, DJJ weaponized every tool of internal bureaucracy to punish protected activity. This was not accidental — it was coordinated, continuous, and calculated.

Supervisors including Ardito, Clark, Correa, Skillern, and Sheffer did not act in a vacuum. They acted in concert, with full knowledge of Plaintiff's protected complaints. The evidence shows this retaliation escalated as Plaintiff persisted — from hostile assignments and surveillance, to manufactured threats, to the use of law enforcement as a tool of intimidation.

This record is not one a court can resolve on paper. The facts are contested. Motives are in dispute. Credibility is squarely at issue. Under Title VII, the Florida

Public Whistleblower Act, and binding Eleventh Circuit precedent, this case demands the scrutiny of a jury — not the shield of summary judgment.

**WHEREFORE,** Plaintiff respectfully requests that this Court **DENY** Defendant DJJ's Motion for Summary Judgment in its entirety.

Respectfully submitted,

**/s/ Quintaurus L. Johnson**

Quintaurus L. Johnson

Plaintiff, Pro Se

---

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to counsel for Defendants via email on this 28th day of December, 2025.

**/s/ Quintaurus L. Johnson**

---